**57 So.2d 744**

**BOX v. MAY et al.**

**No. 40274.**

Feb. 18, 1952.

Ben C. Dawkins, Monroe, Blanchard, Goldstein, Walker & O'Quin, Shreveport, and Watson & Williams, Natchitoches, for plaintiff-applicant.

Lunn & Trichel, Lunn, Irion, Switzer, Trichel & Johnson, all of Shreveport, for defendants-respondents.

LE BLANC, Justice.

This case comes before us on a writ of certiorari to review the decision of the Court of Appeal, Second Circuit, 50 So. 2d 692.

Plaintiff, Joel C. Box, instituted the suit to recover judgment against the defendants, Lawrence L. May and Son, alleged to be a commercial partnership composed of Lawrence L. May and Lawrence L. May, Jr., Helen R. Lee and Charles W. Frazier, in solido, in the sum of $2,633.19.

In his petition he sets out that he was the owner of a certain described property situated in the Parish of Bossier with buildings and improvements thereon, which he had agreed to sell to the defendant, Frazier, for the sum of $4250.00, cash. The method of payment was to be as follows: Frazier was to pay the sum of $1900.00 cash and was then to place a mortgage of $2350.00 on the property in order to take care of the balance of the purchase price. He later agreed to reduce the $1900.00 cash payment to the sum of $1400.00 if Frazier would complete the installation of some unfinished plumbing on the property.

He alleges that Frazier contacted the defendant firm of Lawrence L. May & Son, Realty Brokers, in Shreveport, who agreed

to arrange a loan secured by the property in the amount of $2350.00, and at Frazier's request he went to the office of these defendants and there met the other defendant, Miss Helen R. Lee, manager of the loan department.

He then avers that on that occasion, Miss Lee, in her capacity as said manager of Lawrence L. May & Son's loan department, stated to him that they would handle the entire transaction and that he, placing his trust and confidence in said firm, allowed them to handle it.

He alleges that Miss Lee represented that the transaction would be handled in the following manner:

I. That he, Box, would execute in their offices, an act of credit sale of the property to Frazier in accordance with the terms above set out.

II. That Miss Lee was to hold the act of sale and the note executed in connection with it in the offices of May & Son until title to the property was checked.

III. That after title had been approved, Miss Lee would take the following steps:

(a) Collect from Frazier the $1400.00 representing the cash portion of the purchase price.

(b) Out of this sum she was to pay off a note in the sum of $1116.81 secured by mortgage on the property which was held by Peoples Bank & Trust Company of Minden, Louisiana.

(c) Upon cancellation of the Peoples Bank mortgage the firm of May & Son agreed to negotiate a sale of the note to be executed by Frazier secured by mortgage on the property and pay him the proceeds, the sum of $2350.00 plus the balance left from the $1400.00 cash payment after paying the Peoples Bank mortgage note, that is the sum of $283.19.

He seeks to hold the defendants May & Son and Helen R. Lee for what he alleges was their wilful, negligent and complete disregard of his rights and of their agreement, and in violation of their trust, charging them with having sold the note of $2350.00 executed by Frazier, paying off $1116.81 to the Peoples Bank & Trust Company in Minden, and then recording the act of sale left in the possession of Miss Lee who not only negligently and wilfully failed to collect the $1400.00 cash payment to be made by Frazier but paid over to Frazier the balance received from the sale of the mortgage note of $2350.00 instead of to him, for whom she held it in trust.

Lawrence L. May, Jr., is sued as a member of the alleged partnership existing between himself and his father, and Miss Helen R. Lee as an employee of the partnership who in these transactions was acting within the course and scope of her employment.

Frazier made no appearance in the suit and judgment was entered against him by default for the full amount of the demand of the plaintiff subject however to a credit

of $991.74 which he deposited in the registry of the court after evidence had been closed. The amount deposited represented the balance of the proceeds of the mortgage note of $2350.00 after payment of the Peoples Bank & Trust Company mortgage in the sum of $1116.81 and certain charges, commissions and expenses amounting to $241.45 which May & Son claimed had to be paid.

The defendants Lawrence L. May & Son, Lawrence L. May, Lawrence L. May, Jr., and Helen R. Lee filed a joint answer in which they denied any fiduciary relationship between Lawrence L. May and Son and the plaintiff and more particularly denied that it had ever been agreed that they would collect the $1400.00 cash payment on the sale of the property as alleged by him. Supplementing their answer they set out in rather lengthy detail their version of the transaction which may briefly be stated as follows:

The plaintiff at one time contacted the defendant Lawrence L. May and stated to him that he was selling his property to his friend, the defendant Frazier, and requested that May make a loan to Frazier on the property; that in accordance with the request May and Miss Helen R. Lee met the plaintiff on the site of the property in order to inspect and appraise the house and that being done, they agreed to make a loan to Frazier in the sum of $2350.00 on the property. Upon their return to Shreveport plaintiff and defendant Frazier met with the defendant Lee, who is a Notary Public, and arranged to have her draw up the necessary papers for the loan. Plaintiff directed her to prepare a credit deed with a stated consideration of $4250.00 of which $1900.00 was acknowledged as having been paid in cash and the balance of $2350.00 to be represented by the loan that was to be negotiated by the defendant May. The deed and note were prepared but the closing of the loan had to await the approval of title to the property. After this approval Frazier returned to their office to close out the loan whereupon the defendant Lee telephoned plaintiff at his home in Boyce advising him that the $1116.81 was due on a mortgage to the Bank at Minden and that the insurance expenses and costs of the loan amounted to $241.45 leaving a balance due on the loan of $991.74; that the plaintiff then directed the defendant Lee to pay the balance of the proceeds of the note to Frazier and that he in turn would settle with Frazier, all of which the defendant Lee did.

Several days thereafter plaintiff telephoned Miss Lee to inquire if she had seen the defendant Frazier who had never gone to Boyce to settle with him. Miss Lee then offered to contact Frazier, which she did, and was informed by him that his wife had had a serious operation and that was the cause of his delay in going to Boyce. Some weeks later she received another call from plaintiff Box who again informed her that Frazier had not contacted him yet and that as he was in Shreveport at the time he

was going to see him himself. Subsequently the party to whom they had sold the note informed them that the first installment thereon had become delinquent, whereupon they made inquiry and learned that not only had Frazier failed to make a payment due but had also failed to pay for the well drilled and the plumbing fixtures installed on the premises and that labor and materialmen's liens had been filed, that upon checking with the Clerk of Court and Recorder of Mortgages of Bossier Parish they confirmed the fact that the liens had been filed and also learned that a special mortgage for $1800.00 from Frazier to the plaintiff had been filed against the property and recorded in the mortgage records of that parish. Plaintiff was informed of all of this over the telephone and it was suggested to him that he foreclose on his $1800.00 mortgage note and proceedings would be withheld by the party holding the $2350.00 note. Plaintiff then stated that he held no second mortgage note and he would contact his attorneys at Natchitoches, Louisiana. On or about June 14, 1948 demand was made on them by plaintiff through his attorneys for the amount herein sued on. Miss Lee again contacted Frazier who was then a patient in the Barksdale Field Hospital and was advised by him that he had met with the plaintiff in Natchitoches some five weeks before and that plaintiff had stated to him that all he wanted was to be protected and it was then agreed that Frazier would give him a mortgage for $1800.00 which was there-

after executed as just stated. Frazier authorized his wife to deliver the note to the defendant Lee for delivery to plaintiff and upon the latter being advised that the note was held for his account he refused to accept it.

These defendants deny any liability on their part whatsoever but set out that in the event any of them should be cast with Charles W. Frazier, the latter, being primarily liable, should be called in warranty and they in turn should recover judgment against him for any amount for which any of them may be cast.

After trial in the district court there was judgment rejecting the demands of the plaintiff against all defendants except Charles W. Frazier as against whom judgment went by default. An appeal was taken to the Court of Appeal, Second Circuit, where the judgment was changed in two respects. First the demand against Lawrence L. May, Jr., was rejected on the ground that there was no partnership existing between him and his father; that he was merely an employee of his father who had not been shown to have had any connection with the transaction between the parties except signing the check for the proceeds of the loan, under instructions from his superiors. Secondly, the court rendered judgment in favor of the plaintiff against Lawrence L. May and Helen R. Lee, in solido, in the sum of $117.50 that being the amount of a commission of 5% on the amount of the loan which

had been wrongfully charged to the plaintiff. Judgment for the amount was then rendered in favor of the two defendants against Charles W. Frazier who was held to be primarily liable for the commission.

An application for re-hearing was refused and writs were then applied for to this court. As we were led to believe that an important question of law relating to the obligations of those acting as note brokers was involved, writs were granted. The contention made in the application was that the defendants May and Lee had acted in such capacity and bore a fiduciary or mandatory relationship to the plaintiff as a consequence of which they were liable for all damages suffered by him arising out of their faults. Upon a careful consideration of the entire record which is now before us, after having heard the case argued, we have become convinced that only questions of fact are involved from the consideration of which the Court of Appeal reached its conclusion and rendered judgment.

Some of the facts are not disputed but on the most important and controlling issue, that is the one regarding the agreement that the defendant Helen Lee was to collect $1400.00 from Frazier as the cash part of the purchase price of the property, and also make a distribution of the proceeds of the note of $2350.00, the testimony is so conflicting and confusing that it would be a hopeless task to attempt to reconcile it. The Court of Appeal was of the same opinion but nevertheless felt that certain phases of the disputed points were open to a ready solution. For instance the court stated:

"We have had no difficulty in concluding that Miss Lee delivered the proceeds remaining from the negotiated note, after deductions, to Frazier without any authority from the vendor, Box. We have carefully noted Miss Lee's version of the story, namely that she talked to Box by long distance telephone on the morning of April 14, 1948, to advise him that the deal had been closed and that she simply followed his instructions by delivering the balance of the proceeds to Frazier. This is squarely controverted not only by the testimony of Box but by the testimony of two witnesses, residents of Boyce, Louisiana, whose depositions are in evidence, to the effect that Box did not talk by long distance until sometime during the afternoon of the 14th. We can only conclude that Miss Lee's recollection of the facts was faulty. There are numerous discrepancies in the testimony of many of the witnesses who appeared in this case. It is obvious that Frazier must appear in a most unsavory light by reason of his admitted conversion of funds which belonged to Box. His testimony in many respects is equivocal, and understandably so under the circumstances. Counsel for defendants vehemently attack the credibility of the plaintiff, Box. It is quite true that plaintiff's testimony in some respects entirely fails

to reflect certain facts and incidents which are otherwise definitely established. For example, we seriously question the credibility of plaintiff's testimony to the effect that sometime after most of these pertinent incidents had transpired, and after he knew that he had been defrauded by the defendant, Frazier, he nevertheless took possession of a truck owned by Frazier based upon his agreement to pay $1,800 in cash therefor. The payment, according to the testimony of Box, was not made because the truck was almost immediately seized while in his possession under the provisions of an existing chattel mortgage or mortgages.

"But where so many of the witnesses have been victims of confusion, mistake or uncertainty, we do not think it proper to stigmatize any one of them. Careful examination of the record discloses discrepancies in the testimony of Miss Lee and of Mr. May, Sr., and in instances the testimony of these two witnesses with respect to certain facts is squarely contradictory." [50 So.2d at page 694]

Following this the court discussed the liability of Lawrence L. May, Jr., and reached the conclusion already indicated. It had no difficulty whatever in reaching the same conclusion as did the trial judge regarding the defendant Frazier's liability and that left for consideration the liability of the defendants Lawrence L. May and Helen R. Lee, concerning which it stated: "Meticulous consideration convinces us that

the only ground for any substantial liability as against Miss Lee must rest upon the validity of plaintiff's contention that she promised to protect him by collecting the cash portion of the consideration represented by the deed. Entirely eliminating the conflicting testimony of the witnesses on this point, we think it would be utterly unreasonable to reach a conclusion that such an understanding in fact existed. To begin with it is evident from the history of the negotiations between Box and Frazier prior to the occurrence of the disputed propositions here involved, that Box was thoroughly cognizant of the fact that Frazier did not have sufficient funds with which to discharge the alleged cash portion of the consideration. True we are inclined to believe that Box felt, somewhat vaguely and uncertainly, that Frazier might have sources upon which he could call for these funds. Nonetheless it is evident, even if he be given the benefit of every possible doubt or question, that plaintiff has completely failed to prove the alleged agreement by a preponderance of the testimony."

The court made no reference in its opinion to the testimony of the witness Weldon Dow Elliott, Assistant Vice-President of the First National Bank of Shreveport, which we believe corroborates to a large extent the proof that the plaintiff and defendant Frazier had something in mind regarding the cash part of the purchase price for the property other than its payment by Frazier in cash. The testimony of this

witness is to the effect that these parties had contacted him together in order to negotiate a loan secured by first mortgage on the property and in their discussions the matter of the cash payment came up and he understood from them that it was to be taken care of by some deal between them involving the transfer of a truck and also by a note secured by a second mortgage on the property. The subsequent action of these parties as reflected in the opinion of the Court of Appeal, indicate that their real intention was something along that line and never was it intended that Lawrence L. May or Miss Helen R. Lee was to collect $1400.00 cash from Frazier as the cash part of the purchase price of the property.

Finding no error in the judgment of the Court of Appeal it follows that the writs heretofore granted will have to be recalled.

Writs recalled and judgment affirmed.